## ROUND LAKE ASS'N v. KELLOGG.

*(Supreme Court, General Term, Third Department.* September 14, 1892.)

LEASE—RESTRICTING USE OF PREMISES.

Where a religious corporation, organized for camp-meeting purposes, purchased a tract of land, and subdivided it, and leased lots for 99 years, reserving an annual rental, the lease containing a covenant that the tenant accepted "subject to all the rules and regulations which may * * * be adopted * * * by the [corporation] for the government of the said grounds," which rules were made part of the lease, such covenant runs with the land, and the tenant takes only a qualified title, and his assignee may be enjoined from carrying on the business of merchandising on his lot, where the rules of the corporation forbid it. *In re Jacobs*, 98 N. Y. 105, distinguished.

Appeal from special term, Saratoga county.

Action by the Round Lake Association against Bradford D. Kellogg. From an order by Mr. Justice PUTNAM, made at special term in 1890, granting an injunction in favor of plaintiff, defendant appealed, whereupon the general term reversed the order, on the ground that an injunction *pendente lite* was not proper; but no opinion was expressed on the merits of the case. 11 N. Y. Supp. 854. The case was then tried at special term before Mr. Justice TAPPAN, and from a judgment rendered in favor of plaintiff, granting an injunction, defendant appeals. Affirmed.

The opinion of Mr. Justice PUTNAM, filed in 1890, is as follows:

"Plaintiff is a religious corporation, incorporated May 5, 1868; its object being the maintenance of a Christian summer home, and the promulgation of education, morality, and religion. For the purpose of carrying into effect the object of the corporation, it has purchased a tract of land, and divided it into lots, and leased said lots; the defendant being in possession of one of them under a lease from plaintiff, reserving an annual rent. It is provided in said lease that the same is accepted by the tenant subject to all of the rules and regulations which may from time to time be adopted and promulgated by the corporation for the government of the grounds, and which rules are made a part of the lease as fully as if incorporated therein. One of the rules adopted by the corporation forbids the sale of merchandise on any of the lots of said association without a purchased permit from the executive committee of the plaintiff. The defendant, without such permit, has opened a store on his lot, and is engaged in the sale of groceries therein, and the plaintiff asks for an injunction restraining the continuance of said business. It is claimed that the plaintiff's rules or by-law prohibiting the sale of merchandise on a lot owned by one of the members of the association is unauthorized by its charter, and, if so authorized, is a violation of a constitutional right, in forbidding defendant to carry on a lawful business on his own premises; that the by-law restrains his personal liberty, as it prevents defendant from the pursuit of his business; that it confiscates his property; that it takes private property for private purposes, and deprives defendant of his property without due process of law. Plaintiff's premises are used as a camp-meeting ground for religious purposes. The lessees of lots are members of the association. The great object of the association is to hold and carry on, in its grounds, religious services. The premises are camp-meeting grounds. If the corporation is unable to control the use of its lots, it is certainly unfortunate. If any lessee of a lot can, at his will, carry on a lawful business, the effect, necessarily, will be to destroy the corporation. One tenant might obtain a license and sell liquor. Another might start a manufacturing business on his premises. The grounds might soon be covered with shops, stores, taverns, groceries, and thus become entirely unfitted for the purpose for which the premises were obtained. To retain the premises for the use for which they were obtained and divided into lots, it is essential that the corporation should have

the right to control the use to which said lots shall be put.   I think that the rights of defendant under his lease are similar to the rights of a party who buys or leases a lot in a cemetery, or a pew in a church.   Whatever may be the form of the deed or lease in such cases, the purchaser does not take an absolute title, but a qualified one, and a title subject to the rules and regulations prescribed for the government of such church or cemetery.   *Cemetery* v. *Buffalo*, 46 N. Y. 503; *Thompson* v. *Hickey*, 59 How. Pr. 434; *People* v. *Trustees*, 21 Hun, 184, 185; *Voorhees* v. *Presbyterian Church*, 8 Barb. 150, 151; *Wheaton* v. *Gates*, 18 N. Y. 404.

"Defendant cites *In re Jacobs*, 98 N. Y. 105–112, and kindred cases.   Of course this case, so recently decided by the court of last resort, is to be followed.   But this case, and the others cited by defendant, are not applicable to the case we are considering.   In *Re Jacobs* the relator was the tenant of the absolute owner of a lot in a city, and was carrying on a lawful and innocent business thereon.   The legislature assumed to pass a law prohibiting the carrying on of said business.   The law was held unconstitutional.   In that case the relator's landlord had the absolute title to the premises.   In this case the defendant has only a qualified title.   He occupied under a lease made subject to the rules and regulations promulgated by plaintiff as to the use of said premises.   These rules, as we have shown, are reasonable and proper, and necessary to the very continuance and the existence of the corporation.   Suppose, in the *Jacobs Case*, the lease from the landlord had prohibited the manufacture of tobacco on the leased premises, and the action had been by the landlord to restrain such use in violation of the covenants of the lease, can there be any doubt but the court would have sustained such an action?   Here there was a covenant in the lease under which defendant occupied his premises that said lease was subject to all the rules and regulations prescribed by the corporation, one of which forbade the sale of merchandise without a permit.   The action is, in effect, one to compel the performance by defendant of the covenants of his lease.   It does not interfere with any vested right of his, but seeks to compel him to perform his contract.   As such I think the action can be maintained.   *Dodge* v. *Lambert*, 2 Bosw. 570; *Hodge* v. *Sloan*, 107 N. Y. 244–250, 17 N. E. Rep. 335; *Trustees* v. *Lynch*, 70 N. Y. 440; *Howard* v. *Ellis*, 4 Sandf. 369; *Steward* v. *Winters*, 4 Sandf. Ch. 628.   I will not attempt to consider all the cases cited by the defendant, but what was said of the *Jacobs Case* may be said of each of them.   They are not parallel cases to this case.   No well-considered case can be found, holding it a violation of the constitutional right to enforce a reasonable covenant in a lease as to the use to be made of leased premises.   A tenant can have no constitutional right to violate the covenants in a written and sealed contract under which he occupies the demised premises.   It follows that the injunction sought by the plaintiff should be granted."

The opinion of Mr. Justice TAPPAN, on making the order appealed from, is as follows:

"This is an action to perpetually enjoin the defendant from carrying on the business of selling merchandise upon lots 1426 and 1427, situated on the westerly side of the railroad at Round Lake, leased by the plaintiff, and held by the defendant under assignments of said leases.   It is important to first consider what right, title, or interest was acquired by Caroline J. Bancroft to lot 1426 by virtue of a grant and demise from plaintiff to her, dated March 7, 1884, assigned by her to defendant September 24, 1886; also by Rice Hall to lot 1427 by virtue of a like grant and demise from plaintiff to him, of like date, assigned by him to defendant September 5, 1886.   The leases run to the lessees, his and her executors and assigns; but the fourth paragraph of such leases provides that the lessee shall not assign the lease without first obtaining the written consent of the party of the first part, its successors or

assigns, thereto. It does not appear that the defendant obtained such written consent in either case, but the defendant entered into occupation of the premises under the assignments to him, and holds and occupies the same under said leases. Permitting defendant to do so, and bringing this action against him to enforce an alleged provision of such leases, is a waiver of the breach of such condition in regard to the written consent to the assignment of such leases. *Assembly* v. *Alling*, 46 Hun, 582, 584; *Murray* v. *Harway*, 56 N. Y. 337. Defendant holds the title of the lessees. He stands in the shoes of his assignors, with their rights, and subject to their liabilities, under the provisions of the lease for the benefit and protection of the plaintiff. The plaintiff was duly incorporated under an act entitled ' An act to incorporate the Round Lake Camp-Meeting Association of the Methodist Episcopal Church of the Troy Conference,' passed May 5, 1868. By the second section of that act such corporation was given power to purchase and hold personal and real estate, and take and hold the same, by gift, grant, and devise, and to mortgage, sell, and convey any of its real or personal estate, whenever it should be deemed advisable, to promote the interests of the corporation; and the sixth section of such act confers upon said corporation the general powers, and made it subject to the general restrictions, contained in the eighteenth chapter of the first part of the Revised Statutes. 1 Rev. St. (Birdseye's Ed.) 672. The third section of said act of 1868 provides that the corporation shall have power to adopt a constitution and prescribe rules and regulations not inconsistent with the constitution and laws of this state for its government and the election of its officers; and the fourth section provides that the persons named in the first section of the act shall be the first trustees, and provides for dividing the trustees into classes at their first meeting, and for the election of their successors, by electing each year after the organization seven trustees to hold office for three years, and until others shall be elected in their places, and provides that all elections of trustees shall be held in the manner prescribed in the constitution and by-laws of the said corporation, and that any vacancy occurring in the intervals of election may be filled by the board of trustees. The original incorporators were twenty-one different persons, named in the first section of the act.

"Section 1 of the chapter of the Revised Statutes above mentioned, provides that every corporation created after the enactment of that law shall have the following powers, although they may not be specified in its charter or the act in which it shall be incorporated, viz.: (1) To have succession, by its corporate name, for the period limited in its charter, and, when no period is limited, perpetually. (2) To sue and be sued, complain and defend, in any court of law and equity. (3) To make and use a common seal, and alter the same at pleasure. (4) To hold, purchase, and convey real estate, as the purposes of the corporation shall require, not exceeding the amount limited in its charter. (5) To appoint such subordinate officers and agents as the business of the corporation shall require, and to allow them a suitable compensation. (6) Make by-laws, not inconsistent with any existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock. Section 6 of this same statute provides that, when the corporate powers of any corporation are directed by its charter to be exercised by any particular body or number of persons, a majority of such body or persons, if it be not otherwise provided in the charter, shall be a sufficient number to form a board for the transaction of business, and any decision of a majority of the persons duly assembled as a board shall be valid as a corporate act. Such body is not duly assembled unless each person constituting it is present, or such person has had notice and a majority has assembled. Then the decision of such majority is valid as a corporate act. *People's Bank* v. *Roman Catholic Church*, 39 Hun, 498; Potter, Corp. p. 417, c. 13, § 336, note 1; *People* v. *Batchelor*, 22 N. Y. 128; *Insurance Co.* v. *Westcott*, 14

Gray, 440; *Dispatch Line Packets* v. *Bellamy Co.*, 12 N. H. 205; *Elliot* v. *Abbot*, Id. 549. This is the rule, notwithstanding what is said in *Porter* v. *Robinson*, 30 Hun, 209, and *Edgerly* v. *Emerson*, 23 N. H. 555. This is a sufficient concession to the convenience of transacting business, and a conservative construction of this statute. When a society or corporation is composed of an indefinite number of persons, as is the case with this corporation, a majority of those who appear at a regular meeting of the same constitute a body competent to transact business. Potter, Corp. §§ 338, 351; *Ex parte Willcocks*, 7 Cow. 402, 409; *Field* v. *Field*, 9 Wend. 394, 403. Notice is not required where the times and places for holding are fixed in the charter or constitution or by-laws, or in the published rules and regulations of the corporation. Potter, Corp. §§ 340, 342. Where it appears on the record of the corporation that a meeting of the body was held, and a quorum was present, notice to the others is presumed, but the contrary may be shown by proof. *Sargent* v. *Webster*, 13 Metc. (Mass.) 497; *Lane* v. *Braincrd*, 30 Conn. 565; *Middlesex Husbandmen* v. *Davis*, 3 Metc. (Mass.) 133; *Insurance Co.* v. *Holmes*, 68 Mo. 601. The first meeting of the trustees of the plaintiff was held at Troy, May 4, 1868, and the executive committee was then directed to draft a constitution, and report the same at the next meeting of the board. The next meeting of the trustees was held at the committee tent, on the grounds, September 9, 1868, the records showing 12 trustees present. The committee on constitution then presented their report, and the constitution and by-laws then reported by said committee were then adopted by the trustees by voting on each article. These original incorporators and trustees were authorized by the act of incorporation to adopt a constitution. They were then the corporation. They were given *carte blanche*. The act, except by the name, did not indicate even the objects of the corporation. This constitution provided that the objects of the association should be to hold such camp meetings within the bounds of the Troy conference as they might choose. Article 3 provides that the members of the association should be—*First*, the persons named in the act of incorporation, and their successors; *second*, all persons who should contribute to the fund of the association an amount of money not less than $100; *third*, churches which should contribute $100 and upwards might be represented by their stewards or the pastors of such churches, as their quarterly conference might direct. Officers were to be elected by the trustees from their number. The president, vice president, secretary, and a prudential committee of three, together, were to constitute an executive committee; and it was provided that they should have full power to act for the board of trustees during the interim of their regular meetings, and should hold their offices until successors should be duly elected. It is provided by article 5, § 2, that the trustees shall have the general oversight of all the interests of the association, and shall have all the power vested in them by virtue of the acts of incorporation. By section 5, art. 6, it is provided that the executive committee shall arrange the price of the ground rent, privileges for boarding, tents, and other privileges. Article 10 provides that this constitution and these by-laws shall not be altered or amended except by a vote of three fourths of the members present at a regular meeting of the association, written notice of such alteration or amendment having been given at a previous meeting. This constitution was approved by the stockholders of the association assembled at a meeting at the State Street M. E. Church, Troy, March 31, 1869. At the sixth annual meeting of the association, held at the same place, March 25, 1874, a committee appointed at the last annual meeting to prepare such amendments to the constitution as will make it conform to the change from the script form to the lot form reported through Dr. King, and the meeting proposed to take up the proposed amendments section by section, all of which were adopted with one dissenting voice. The records showed proper notice had been given at a previous meeting, and the amend-

ments to have been regularly, properly adopted. The amendments attempted by the executive committee of the trustees at their meeting held March 12, 1887, do not appear to have been passed as provided by the previous constitution, and were therefore without proper authority, and did not become a part of the constitution. Due regard to the rights of all the members of the corporation required strict regularity, to give authority to amendments to the constitution and by-laws, which, under an act as general as that incorporating the plaintiff, is the record of the rights, power, and purposes of the plaintiff, in which every member is equally interested.

"The executive committee were clothed with all the powers of the trustees during the interim of their regular meetings, and had authority to make the rules and regulations of 1887, and such rules were duly made by said executive committee at its meeting held at Albany March 26, 1887. Such regulations provided that merchandise, general or special, should not be sold or offered for sale on any lot or at any place on the association grounds, either on the east or west side of the railroad, without a purchase permit given in writing by the executive committee. The executive committee had power to then pass a resolution that the defendant be permitted to conduct a store for the sale of groceries, dry goods, crockery, hardware, tinware, boots, shoes, tobacco, cigars, at $50 for 1887, and not to exceed $400 for the next 4 years. These regulations referred to the ordinary transactions of the corporation, and its full power was lawfully exercised in passing them. By chapter 244, Laws 1869, the trustees were authorized to issue scrip, payable as the interest of the association might permit, to the amount of $25,000, to be divided into shares of $100 each, bearing interest of not exceeding 7 per cent. per annum, as the balance in the hands of the treasurer might justify. After meeting all legal claims against the association, it was provided that all surplus or excess after making improvements on the grounds and public buildings, as the interest of the association demanded, to be paid to the trustees of the Troy conference for the benefit of the conference claimants. By chapter 227, Laws 1873, the association was given power to sell and convey lots to scrip holders, and to receive the scrip held by them in exchange, in payment therefor, upon such terms as the trustees might prescribe. The leases in question were made in pursuance of the power given by this act. They contained two covenants, the first of which, after the usual words of leasing, and the description of the lots, was as follows: 'Subject to all the rules, regulations, and changes which may from time to time be adopted in relation thereto.' This covenant relates specially to the specific lot demised by the lease. The other covenant is as follows: 'The lease is accepted by said party of the second part subject to all the rules and regulations which may from time to time be adopted and promulgated by the party of the first part for the government of the said grounds, and which are hereby made a part of this lease, as fully, to all intents and purposes, as if they were incorporated therein.' This covenant follows a provision in said leases in the following language: 'This lease is granted by said party of the first part, and accepted by said party of the second part, subject to the following express conditions, reservations, and restrictions.' The tenure of land by the constitution is allodial, so that the entire and absolute property is vested in the owner, and such was the plaintiff's title before these leases were made. The power to sell and convey real estate includes the power to sell and convey a restricted and limited interest by lease. This corporation has the same power, under the statute, to demise their lands, giving only a limited or restricted interest, that an individual has. By the leases in question the plaintiff did not convey the entire and absolute property, and the defendant, by the demise, is not the owner of the premises in that sense. The design of the provisions in the lease was

to create an easement or servitude in the property leased for the benefit of other lots owned by the plaintiff, some of which would be acquired by others, and for the purpose of effectually securing the objects for which the association was created and is conducted. The principal and primary purpose of dividing the property into lots was to provide the persons congregating on the grounds of the plaintiff with an opportunity to erect local habitations more convenient than the tents under which the persons attending camp meetings were originally sheltered.

"Plaintiff had provided a store for the sale of general mechandise, and other stores for the sale of different kinds of goods, and had rented the same for such purposes, and thereby derived a portion of its revenue therefrom, and had the right to make such reservations and conditions and require such covenants as would protect its own place of business from a competition which would impair the ability of the occupants to contribute towards such revenues, and would secure the use of all other property for residential purposes only. Where a grantee binds himself by a covenant in his deed limiting the use of land purchased in a particular manner, so as not to interfere with the trade or business of the grantor, such covenant may be enforced against the grantee, or his grantee taking title with notice of the restriction. A covenant in restraint of trade is valid if it imposes no restriction upon one party which was not beneficial to the other, and was induced by a consideration which made it reasonable for the parties to enter into it; and the covenant will be enforced if a disregard thereof will work injury to the covenantee. *Hodge* v. *Sloan*, 107 N. Y. 244, 17 N. E. Rep. 335. The court, in that case, says: 'Parties competent to contract have contracted, the one to sell a portion of his land, but only upon such conditions as will protect himself in the prosecution of business carried on upon the residue; the other agrees to buy for a consideration effected by that condition, and is enabled to do so only by acceding to it, and he therefore binds himself by a contract to limit the use of the land purchased, in a particular manner. By reason of it the vendor received less for his land, and the plain and express intention of the parties would be defeated if the covenant could not be enforced." *Tulk* v. *Moxhay*, 1 Hall & T. 105, was where the purchaser of the land, which was conveyed to him in fee simple, covenanted with the grantor that the land should be used and kept in ornamental repair as a pleasure garden, and it was held that the vendor was entitled to an injunction against the assignee of the purchaser, to prevent him from building upon the land. The court says: 'Of course the party purchasing the property which is under restriction gives less for it than he would if he had bought it unincumbered. Can there be anything much more inequitable or contrary to good conscience than that a party who takes property at a less price because it is subject to a restriction should receive the full value from a third party, and that this third party should then hold it unfettered by the restrictions under which it was granted?' For illustrations of the same principle, see *Tallmadge* v. *Bank*, 26 N. Y. 105; *Trustees* v. *Lynch*, 70 N. Y. 440; *Carter* v. *Williams*, L. R. 9 Eq. Cas. 678; *Parker* v. *Nightingale*, 6 Allen, 341; *Burbank* v. *Pillsbury*, 48 N. H. 475. The covenant concerns the land granted, and runs with it. It was inserted in the lease as a covenant defining the conditions upon which the demised premises were to be held. In *Brouwer* v. *Jones*, 23 Barb. 153, 160, a covenant not to use certain premises in a particular way was enforced against a purchaser in favor of a previous purchaser of lands in same tract from the same grantor, upon the ground that the covenant was for the benefit of the owners of the whole tract, and created an easement or servitude in the land which would be enforced in favor of any owner of any part of the tract for whose benefit it was created. See, also, *Barrow* v. *Richard*, 8 Paige, 351; *Wetmore* v. *Bruce*, 118 N. Y.

319, 322, 23 N. E. Rep. 303; *Whitney* v. *Railroad Co.*, 11 Gray, 359. A court of equity or law gives full effect to the stipulation on the complaint of a party for whose benefit and protection, as owner of the land, the stipulation was intended. See cases above cited; also, *Hills* v. *Miller*, 3 Paige, 256; *Watertown* v. *Cowen*, 4 Paige, 511; *Dorr* v. *Harrahan*, 101 Mass. 531. The covenants in these leases must be construed with reference to the acts of incorporation, the amendments thereto, the constitution and by-laws of the plaintiff in existence when the leases were made, and in view of the fact that plaintiff had acquired lands to further the common objects of the association, some of it to be held for its special use and occupancy and the common benefit of all the members, and other portions to be demised in like manner as the lands included in these leases; that, to accomplish the purposes for which the plaintiff was incorporated, these lots, and all others that might be demised, were to be made valuable and enjoyable as aids to the common purpose by means to be derived from the plaintiff's revenue, and by exercise of the power to make rules and regulations for the common benefit of all the members of the association. The organization of the association was not for the purposes of trade, or for pecuniary profit to the members, arising from trade. Dealers in merchandise could not have been reasonably expected by the parties to the lease to carry on their business on the grounds of the plaintiff, except to supply the immediate needs of those who might for the time be there, and participate in the religious and other meetings to be conducted there. Such parties must have understood that the determination as to who should trade, and upon what terms, was to be with the plaintiff, to be regulated with reference to its revenue, and to guard against the carrying on of unnecessary, improper trade, tending to disorder, and to defeat the purposes of the organization. In this view, restraining a lot owner as to trade was a reasonable application of the covenant in the lease, within its language, spirit, and meaning. But, if it is not the best provision which we can see the parties could have made to accomplish the object intended, criticism against it is met with the rule that the owner of land, selling or leasing it, may insist on just such conditions as he pleases touching the use and mode of enjoyment of land. He has a right to define the injury for himself, and a party contracting with him must abide the definition. This is substantially the language of the court in *Steward* v. *Winters*, 4 Sandf. Ch. 590; and, for illustrations of the same doctrine, see *Howard* v. *Ellis*, 4 Sandf. 369; *Ambler* v. *Skinner*, 7 Bob. (N. Y.) 561; *Match Co.* v. *Roeber*, 106 N. Y. 473, 13 N. E. Rep. 419; *Avery* v. *Railroad Co.*, 106 N. Y. 142, 12 N. E. Rep. 619; *Post* v. *Weil*, 115 N. Y. 361, 22 N. E. Rep. 145, 2 Washb. Real Prop. 12; *Moore* v. *Pitts*, 53 N. Y. 85; *Gibert* v. *Peteler*, 38 N. Y. 165; *Plumb* v. *Tubbs*, 41 N. Y. 442; McAdam, Landl. & Ten., pp. 176, 177, §§ 98, 99, Id. pp. 361, 366, § 161; *Peck* v. *Conway*, 119 Mass. 546, 548. The defendant was notified by the terms of his lease of the rights of plaintiff, and he was informed by the officers of the plaintiff, before he began to build his store, that he would be required to purchase a permit for the sale of merchandise. An injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. Such a breach is a sufficient ground for interference by injunction. Pom. Eq. Jur. p. 273, § 1342; Bisp. Eq. p. 514, § 461. And this view has been enforced by this court in *Assembly* v. *Alling*, 46 Hun, 582, in a case in many respects like the case at bar. Plaintiff is entitled to a decree perpetually enjoining and restraining the defendant and all persons claiming under him from selling or offering for sale merchandise, or from carrying on any business, trade, or vocation upon the demised premises without the written consent of the plaintiff, with costs of this action. Decreed accordingly."

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*James W. Verbeck*, (*E. Countryman*, of counsel,) for appellant. *Charles S. Lester*, for respondent.

HERRICK, J. I have examined this case, and it seems to me it should be affirmed. There have already been three opinions written in it. On the merits the opinions of Judges PUTNAM and TAPPAN strike me as sufficient. The general term opinion was to the propriety of a preliminary injunction, and did not reach the merits. I think the judgment should be affirmed.

Affirmed, without opinion.

MAYHAM, J. I concur in the above conclusion.