DANIEL P. DURYEA, Respondent, v. PEARL HENDRICKSON, Appellant.

Second Department, November 24, 1916.

Real property — lease — mutual covenant against sale of liquors — when such covenant runs with the land — effect of absolute conveyance to holder of long term lease containing such covenant — enforcement of mutual covenant — effect of change in use of property from lapse of time.

The sale of liquors is a "mercantile purpose" within the meaning of a lease of lots by a Methodist camp meeting association, providing that they should not be used "as a public Boarding house or any mercantile or mechanical trade or purpose whatsoever, or for any other purpose than as a residence or seaside resort," without the written consent of the association.

Where the holder of such a lease for ninety-nine years, with the privilege of renewal for a similar term forever, takes an absolute deed of his lot from the association, containing a covenant against the sale of liquors, the taking of such an absolute estate in supplement to the qualified estate, is sufficient to support the restrictive covenant and make it run with the land.

Action by an owner holding under such a lease and conveyance against an owner of another lot, purchased under the same conditions and situated a half mile distant, to restrain the defendant from selling liquors on the premises in violation of the mutual covenant in the deeds. *Held*, that although the place has changed from a camp meeting ground to a village of permanent inhabitants, and that it has lost almost entirely its former character of a religious gathering place, and now has a business section, stores, etc., the changes are not of such character as to impair ordinary use of defendant's property by the enforcement of the mutual covenant.

Appeal by the defendant, Pearl Hendrickson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 21st day of June, 1915, upon the report of an official referee.

*Terence J. McManus*, for the appellant.

*Henry A. Uterhart*, for the respondent.

Carr, J.:

The defendant owns a tract of land on the shore front at Sea Cliff, Nassau county, on which there is a group of buildings occupied for hotel purposes. In 1914 she obtained a "liquor tax certificate" for the purpose of selling liquors thereon. The plaintiff is the owner of a lot of land, occupied for residential purposes, situate upwards of a half mile distant from the defendant's premises. He brought this action in equity to obtain a permanent injunction against the sale of liquors on the defendant's premises, on the ground that such sale would violate a restrictive covenant in deeds from the common source of title. The case was tried before an official referee. The defendant made no requests to find. Her appeal is based upon her exceptions to the findings of fact and conclusions of law made on the plaintiff's request.

Sea Cliff was started some fifty years ago as a Methodist camp meeting place. A corporation, organized for religious

Second Department, November, 1916.          [Vol. 175.

purposes, acquired the tract of land which now embraces the village of Sea Cliff. It made a map laying out the tract in lots. It built a " tabernacle " for religious services. It leased out various lots to persons desiring to use them while attending the camp meeting during the summer. These leases ran for ninety-nine years, with the privilege of renewal for a similar term forever. An annual rent was reserved. The leases provided that the tenancy should be subject to such rules as the camp meeting association might make from time to time, and they provided likewise that the lots should not be used "as a public Boarding House; or any mercantile or mechanical trade or purpose whatsoever, or for any other purpose than as a residence or seaside resort," without the written consent of the corporation. While these leases did not contain any express prohibition against the sale of liquors, yet the sale of liquors is a "mercantile" purpose and such could not be allowed "without the written consent" of the corporation. It would seem to me very plain that, considering the purpose of the lease and the then nature of the locality, the corporation could have made a rule thereafter making an express prohibition against the sale of liquors. These leases appear to have been modeled upon the form of leases made generally by Methodist camp meeting corporations, and were in all respects similar to the one under consideration in *Round Lake Association* v. *Kellogg* (20 N. Y. Supp. 261; affd., with further opinion, 141 N. Y. 348). In 1877 the camp meeting association, for a valuable consideration, gave absolute deeds of the lots to all the leaseholders, and these deeds contained express and absolute covenants against the sale of liquors on the various premises. The plaintiff holds his title subject to such a covenant, and the defendant holds under conveyances in which this covenant appears. But the defendant contends that the covenant did not run with the land so far as her parcels are concerned. This contention is based upon the proposition that her predecessors in title acquired no interest in the land by virtue of the deeds, inasmuch as, when the deeds were given, these predecessors had already an estate in fee by virtue of the perpetual leases, and, therefore, the grantor in the deeds had no privity of estate with

the then lessee, and the covenant in the grant was but personal and did not run with the land. If this be so, that is the end of this case. But the lessee did not take more than a qualified estate under the lease. (*Round Lake Association* v. *Kellogg, supra.*) There was a legal privity of estate or title between the lessor and the lessee. The granting of an absolute estate, in supplement to the qualified estate, was sufficient to support the covenant and make it run with the land. But the appellant contends further that such a covenant should not now be enforced in equity, as the neighborhood has so changed in character as to make its enforcement in equity unduly harsh and practically destructive of the defendant's property rights. It is true that Sea Cliff has changed from a camp meeting ground to a village of permanent inhabitants with a large influx of summer visitors, and that it has lost almost entirely its former character of a religious gathering under Methodist auspices and regulations. It now has a business section, stores of various trades, etc. There is a reference to the proofs to one other hotel that has a bar. Probably that is the only one, other than the defendant's place. I think that the covenant is still enforcible in equity, as the change of circumstances from the lapse of time is not of such a character as to impair ordinary use of the defendant's property by the enforcement of the mutual covenant. The plaintiff wants to keep Sea Cliff a "dry" village. It may seem unreasonable upon his part to do so. Yet it is evident that many people prefer to buy property and to reside in "dry" localities. Their reasons are intelligible. The fact that the defendant may not sell liquor in her hotel does not deprive her of the use of her hotel, for many people, especially families of women and children, prefer a hotel where no liquor is sold. I see no reason to interfere with the judgment, and I recommend its affirmance, with costs.

JENKS, P. J., THOMAS, STAPLETON and PUTNAM, JJ., concurred.

Judgment affirmed, with costs.